Duncan MILLER et al., Appellants,

v.

Stewart L. UDALL, Secretary of the Interior, Appellee.

No. 17286.

United States Court of Appeals District of Columbia Circuit.

Argued April 4, 1963.

Decided April 25, 1963.

---

3. Complete in all respects except that it did not contain argument of counsel and the charge to the jury.

Mr. Chester C. Shore, Washington, D. C., for appellants.

Mr. George R. Hyde, Attorney, Department of Justice, with whom Asst. Atty. Gen. Ramsey Clark, and Messrs. Roger P. Marquis and Herbert Pittle, Attorneys, Department of Justice, were on the brief, for appellee. Mr. S. Billingsley Hill, Attorney, Department of Justice, also entered an appearance for appellee.

Before MAGRUDER, Senior United States Circuit Judge for the First Circuit,* and WASHINGTON and DANAHER, Circuit Judges.

PER CURIAM.

This is an oil and gas case, involving the amendments to the Mineral Leasing Act of 1920, 41 Stat. 437, effected by the Mineral Leasing Act Revision of 1960, approved September 2, 1960, 74 Stat. 781, 30 U.S.C. § 226 et seq. (Supp. II, 1959–60).

Appellants had filed applications for oil and gas leases prior to September 2, 1960, and these were still pending on that date. Appellants were later asked to give written consent to the new rental and other terms imposed by the Act of September 2. They refused to do so. The Secretary of the Interior declined to issue leases to appellants in the absence of such consent. Appellants then brought suit for declaratory and mandatory relief in the United States District Court for the District of Columbia. The District Court entered summary judgment for the Secretary, and this appeal followed.

The opinion of the Deputy Solicitor of the Department of the Interior, explaining the Secretary's decision, states in principal part:

"The act of September 2, 1960, amended the Mineral Leasing Act to require a number of changes in the terms of noncompetitive oil and gas leases, including the revision of the length of the lease term from 5 to 10 years and an increase in the rental rates to 50 cents an acre or fraction thereof for each lease year. These and several other provisions of the act of September 2, 1960, which affect oil and gas leases are set forth in the Bureau of Land Management's Form 4–1558 (December 1960), entitled 'Consent to Changes in Lease Terms Required'. Applicants whose offers were pending on September 2, 1960, including each of the appellants in this case, were asked to consent to the amendment of the lease terms in their pending offers by signing Form 4–1558 (hereafter referred to as the consent form) which also contains a statement of the applicant's consent to be bound by all of the provisions of the act of September 2, 1960.

\*      \*      \*      \*      \*      \*

"The appellants urge several reasons to sustain their claim to leases containing the provisions in effect on the day they filed their respective offers.

"\*  \*  \*  [A]ppellants refer to section 8 of the act of September 2, 1960, which provides that no amendments made by the act shall affect any valid right in existence on the effective date of the Mineral Leasing Act Revision of 1960. The legisla-

* Sitting by designation pursuant to Sec. 294(d), Title 28, U.S.Code.

tive history of this section makes it plain that the Congress did not intend it to include offers pending on the date of enactment. H.R. 10455, 86th Congress, which became the act of September 2, 1960, as passed by the House did not contain a savings clause. During the Senate Committee on Interior and Insular Affairs' consideration of the House bill, it released a Committee Print dated April 1, 1960, which contained a section 9 reading:

" 'No amendment made by this Act shall affect any right acquired under the law as it existed prior to such amendment, and such right shall be governed by the law in effect at the time of its acquisition. Oil and gas lease offers pending in the Bureau of Land Management on the date of this Act for which leases are subsequently issued shall be subject to the rental provisions in force and effect when the lease offers were filed.'

"In reply to a request by the Committee Chairman for its views, the Department commented:

" 'Section 9 of the committee print requires amendment. The first sentence would provide that no amendment made by the bill would affect any right acquired under the law as existing prior to the amendment and the right would be governed by the law in effect at the time of its acquisition. We are in accord with this sentence. However, the second sentence provides that oil and gas lease offers pending in the Bureau of Land Management on the date of aproval of H.R. 10455 for which leases are subsequently issued would be subject to the rental provisions in effect at the time of the filing of the offers. This is highly undesirable. Our repeated statements on the need for new rental provisions have shown the need for revision of those provisions. We do not see any justification for such a windfall as this second sentence would permit. The

statements which we have made on the profits expected under increased rentals have been prepared on the assumption that all leases issued after the date of this bill's enactment would be subject to the revised rental provisions. Consequently, we recommend most strongly that the second sentence of section 9 be deleted.' (Letter dated May 11, 1960, from Under Secretary of the Interior to Chairman, Senate Committee on Interior and Insular Affairs. Senate Report No. 1549, 86th Congress, p. 24 [U.S.Code Congressional and Administrative News 1960, p. 3334].)

"The Bill as thereafter reported out by the Senate Committee and passed by the Senate read:

" 'Sec. 8. No amendment made by this Act shall affect any valid right granted under the law as it existed prior to such amendment.' (Cong. Record, 86th Congress, page 12761.)

"The Committee gave the following explanation for this clause:

" '10. A savings clause, section 8, was written in to insure that the act would be prospective only in effect and that all rights and equities of *leaseholders* under existing *leases* are protected.' (Senate Report No. 1549, 86th Congress, p. 5 [U.S.Code Congressional and Administrative News 1960, p. 3317]; emphasis added.)

"Section 8 was then amended in conference to its final form. The conference report stated:

" '14. Section 8 was added by the Senate to avoid any question with respect to the effect of the amendments to the Mineral Leasing Act made by H.R. 10455 upon *existing leases*.' (House Report No. 2135, 86th Congress, p. 14 [U.S.Code Congressional and Administrative News 1960, p. 3337]; emphasis added.)

"The only conclusion to be drawn from this review of the legislative

history of section 8 is that it was, as the reports repeatedly state, only for the protection of existing leaseholders and that leases issued as a result of offers pending on the date of enactment were to be subjected to the terms and conditions imposed by the new law.

"Moreover, although filing an offer is a necessary condition or prerequisite to the issuance of a lease, it does not give the applicant a valid existing right to a lease. [Haley v. Seaton [108 U.S.App.D.C. 257], 281 F.2d 620 (D.C.Cir. 1960); Richard K. Todd et al., 68 I.D. 291 (1961).] Until the United States accepts an offer by issuing a lease, the filing of an offer, in itself, is obviously not a binding agreement to lease. As the offers involved in these appeals were filed before September 2, 1960, and this Department can not now issue oil and gas leases pursuant to them except in accordance with the act of September 2, 1960, the offers may be accepted only if the applicants consent to their modification in accordance with the act of September 2, 1960. * * *

"The appellants further assert that they are being denied a valid right by the requirement that they file the consent form on the assumption that they became entitled to the issuance of leases at no greater rental rates than those which were in effect when their offers were filed. Since an act of Congress could entirely eliminate oil and gas leasing and thus completely nullify any pending offers, the appellants' objections about the statutory increase in the amount of rental due under leases issued pursuant to offers pending on September 2, 1960, are not persuasive. Inasmuch as filing

an offer to lease does not result in a binding agreement to lease or create a valid right to lease, and since the appellants are not required to lease pursuant to their pending offers, but need only refuse to file the consent form if they do not wish to pay the increased rentals required under the act of September 2, 1960, the assertions on appeal regarding retrospective operation of the act are not relevant."

We agree in substance and result with the Deputy Solicitor's reasoning, at least insofar as it relates to rentals.[1] The saving clause on which appellants rely, and to which the Deputy Solicitor refers, is Section 8 of the Act of September 2, 1960, 74 Stat. 791. It reads as follows:

"No amendment made by this Act shall affect any valid right in existence on the effective date of the Mineral Leasing Act Revision of 1960."

This language, as the legislative history cited by the Deputy Solicitor shows, was intended primarily to protect the rights of existing lessees.[2] It may well be that the section could operate to protect other "valid rights," such as the position of priority acquired by the first qualified applicant who files for a particular tract. But we cannot believe that it entitles an applicant for a lease, whose application was filed prior to September 2, 1960, and was still pending on that date, to the low-rental terms which Congress plainly intended to abrogate as to "All leases issued under this section", i. e., Section 17(d) of the Act as amended on September 2, 1960, 74 Stat. 782. After that date, in our view, the Secretary's authority was limited to the issuance of leases imposing the new and higher rentals set by Congress.

For these reasons, the judgment of the District Court will be

Affirmed.

---

1. The rental issue was emphasized by appellants in this court. We were not asked to, and do not, consider other changes made by the 1960 amendments.

2. We regard the statutory language as ambiguous, making a search of the legislative history appropriate, if not indeed necessary. Cf. United States v. Missouri Pac. R. Co., 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322 (1929).