444 F.2d 200
 D. L. HANNIFIN, on behalf of himself and all others similarly situated, Appellant,
v.
Rogers C. B. MORTON, Secretary of the Interior, and
Michael T. Solan, Manager of the New Mexico Land Office, Bureau of Land Management, Santa Fe, New Mexico, Appellees.
 No. 202-70.
 United States Court of Appeals, Tenth Circuit.
 June 9, 1971.
 
 George H. Hunker, Jr., Roswell, N.M., Lyle E. Teutsch, Jr., and Roy G. Hill, Santa Fe, N.M., for appellant.
 Shiro Kashiwa, Asst. Atty. Gen., and Victor R. Ortega, U. S. Atty. (Raymond N. Zagone and Dirk D. Snel, Attys., Dept. of Justice, on the brief), for appellees.
 Before LEWIS, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 In the case now before us on appeal, the appellant had filed an action against the Secretary of Interior and the Manager of the New Mexico Land Office, seeking declaratory and injunctive relief in respect to the enforcement of a regulation imposing a 25 cent per acre rental as a condition to the issuance of a prospecting permit on sulphur lands. The District Court entered a summary judgment dismissing the cause of action and upholding the decisions of the Manager and the Secretary.
 
 
 2
 Appellant and the numerous others similarly situated in this class action had applied for their exploration permits prior to the promulgation of the regulation imposing the rental fee and indeed prior to the public announcement by the Secretary that such a regulation was being considered. They challenge the authority of the Secretary to impose the rental fee generally and in particular to them in view of the fact that at the time they had applied for permits the Secretary had neither announced nor promulgated the challenged regulation. Thus, the main focus of the argument here is on the retrospective aspect of the regulation. Appellant and his class maintain that their rights to permits vested upon the filing of the applications and that thereafter the Secretary lacked authority to modify the conditions.
 
 
 3
 The statutory authority for the granting of the prospecting permits here in question is commonly referred to as Section 1 of the Sulphur Production Act of April 17, 1926. As the Section was amended in 1932 it reads as follows:
 
 
 4
 * * * the Secretary of the Interior is hereby authorized and directed, under such rules and regulations as he may prescribe, to grant to any qualified applicant a prospecting permit which shall give the exclusive right to prospect for sulphur in lands belonging to the United States located in the States of Louisiana and New Mexico for a period of not exceeding two years: Provided, That the area to be included in such a permit shall be not exceeding six hundred and forty acres of land in reasonably compact form.
 
 
 5
 There is a specific provision which authorizes the Secretary to promulgate regulations to carry out the purposes of the Chapter. This is reported in 30 U. S.C. § 189 and is made applicable to sulphur permits by 30 U.S.C. § 275. The former section authorizes the Secretary "to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this chapter * * *." Section 275, supra, provides specifically for sulphur to be embraced within the rule making power.
 
 
 6
 Prior to 1968 the only payment required of applicants for sulphur-prospecting permits was a $10.00 filing which significantly was imposed by regulations. 43 C.F.R. § 3182.1. Once there has been a discovery and a lease there is a statutory provision for the payment of rentals.
 
 
 7
 The text of the October 30, 1968 regulation (43 C.F.R. § 3182.1) requiring the 25 cent prospecting rental payable in advance provides:
 
 
 8
 (a) * * * Each application shall be accompanied by a filling fee of $10 which is not returnable and by full payment of the first year's rental in the amount specified in paragraph (b) of this section. The rental payment shall be for the total acreage computed on the basis of 40 acres for each smallest legal subdivision.
 
 
 9
 (b) A permittee shall pay an annual rental of 25 cents for each acre or fraction thereof covered by his permit but not less than $20 per year. Such annual payments of rental shall be made on or before the anniversary date of the permit. Payment of rental will be required on all permits issued after the effective date of this section, as amended.
 
 
 10
 In promulgating the above regulation the Secretary explained the policy reason for requiring this rental. He said (33 F.R. 15946, October 30, 1968):
 
 
 11
 It is the policy of the Federal Government and the Department to require a fair return to the Government from the public lands and the resources thereon, unless the law provides otherwise. After careful study and review it has been concluded that this amendment is in line with this policy, and is in the public interest.
 
 
 12
 An annual rental is presently required for all mineral prospecting permits except sulphur. We know of no sound basis for this exception. Nor have our studies shown that the requirement of an annual rental has discouraged development of mineral resources.
 
 
 13
 Quite apart from the statutory grants of authority, the Secretary has "general powers over the public lands as guardian of the people." United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 419, 51 S.Ct. 502, 504, 75 L.Ed. 1148 (1931). See also Seaton v. Texas Company, 103 U.S.App.D.C. 163, 256 F. 2d 718 (1958).
 
 
 14
 This court has also indicated that the Act here in question should be broadly construed in order for the Secretary to properly carry out his proprietary function on behalf of the government and its citizens. United States v. Ohio Oil Co., 163 F.2d 633, 639-640 (10th Cir. 1947). One important aspect of the discharge of the Secretary's function is to see to it that the public interest is served by exacting a fair return on behalf of the government from the persons engaged in exploiting its resources.
 
 
 15
 Concededly, there is neither an express statutory authorization for exacting rental in connection with these permits nor is there any legislative prohibition, express or implied. However, it is generally recognized that the Secretary has broad authority quite apart from that granted to him in the Sulphur Production Act. See Boesche v. Udall, 373 U.S. 472, 476-477, 83 S.Ct. 1373, 10 L.Ed.2d 491 (1963). Nor can the imposition of the present conditions be regarded as an unreasonable exercise of this authority.
 
 
 16
 Finally, the present regulation brings sulphur prospecting in line with the practice of exacting a 25 cent per acre prospecting fee in connection with potassium, phosphate, sodium and coal. This was started in 1959 and concluded with the adoption of the instant regulation. In connection with the legislation authorizing the Secretary to issue prospecting permits for phosphate deposits, 30 U.S.C. § 211(b) (adopted in 1960), there is no mention made of the Secretary's power to require rental payments. An annual rental of 25 cents per acre had been, however, established a year prior to the passage of this legislation for potassium permits. This had been done by regulation. A statement was made at the hearings on the phosphate measure that the Secretary had imposed a 25 cent per acre charge for potassium deposits. The House Committee Report expressly stated that it had omitted an authorization to impose a rental provision because of the testimony that the Secretary was authorized to establish such a condition for phosphate permits even though not specifically recognized by legislation. Subsequently, the Department interpreted the action of the Congress as a tacit approval of the practice established in connection with the issuance of potassium permits.
 
 
 17
 Considered in the light of related statutes and having in mind the history surrounding the regulations in this and related areas, and considering the public interest purposes, together with the proprietary obligations of the Secretary, as proprietor for the public, we conclude that the Secretary was correct in promulgating the regulation in dispute.
 
 
 18
 The remaining question is whether it was proper to apply this rental provision to the applications of plaintiff and the other members of the class who had applied for permits at the time that the regulation was first announced. We are of the opinion that the plaintiff and the members of the class had not acquired any vested right which would preclude subjecting them to the operation of the regulation. The appellant would have us rule that the very terms of § 271, by authorizing and directing the Secretary to issue permits, eliminates or at least narrows his discretion to a point where he cannot refuse to issue a permit to one who pays the $10.00 application fee. To read the statute in the manner requested would be to ignore the wording "under such rules and regulations as he may prescribe."
 
 
 19
 We hold that the statute contemplated that the Secretary impose reasonable conditions in connection with the filing of applications. There is no indication that he acted unreasonably; indeed, it is not contended that the condition imposed is unreasonable or arbitrary and capricious. The sole and only argument is that the Secretary lacked authority.
 
 
 20
 The District Court relied on a somewhat analogous case, Miller v. Udall, 115 U.S.App.D.C. 162, 317 F.2d 573 (1963). This involved a statutory change in noncompetitive oil and gas leases from a 25 cent minimum to a 50 cent minimum. The statute protected from the increase existing lessees. It did not protect the rights of those whose applications were pending when the statutory changes became effective. Counsel would distinguish Miller on the ground that statutory changes are differentiated from changes made by way of regulation. If, however, the Secretary has the authority, and we have here held that he has, the rule making power is not different in legal effect, at least in this context, from the power of Congress to effect any rights which have been acquired by the filing of an application. Southwestern Petroleum Corporation v. Udall, 361 F.2d 650, 654-655 (10th Cir. 1966). In the latter case this court recognized that an applicant filing for a federal noncompetitive oil lease did not have a vested right protected by the Fifth Amendment from later statutory or administrative annihilation.
 
 
 21
 There are other cases which hold that pending applications to prospect for oil do not give rise to property rights which are subject to compensation in condemnation proceedings. See, e. g., United States v. 333.6 Acres of Land, Etc., 38 F.Supp. 589 (S.D.Cal.1941); see also Pankey Land & Cattle Company v. Hardin, 427 F.2d 43 (10th Cir. 1970).
 
 
 22
 It has been held that an application for a federal oil lease is a hope or perhaps expectation rather than a vested property right. See Schraier v. Hickel, 136 U.S.App.D.C. 81, 419 F.2d 663, 666-667 (1969). To hold otherwise, and to thereby recognize that the mere filing of an application creates a property right which is immune from modification, would seriously handicap the Secretary in the exercise of his proprietary duties.
 
 
 23
 In concluding that the application for a prospecting permit does not create a vested right, we are not to be understood as suggesting that a permit once granted or issued also stands in the shadow of legislative or administrative change. This question is not before us.
 
 
 24
 The judgment is affirmed.