The SUPERIOR OIL COMPANY, and Pennzoil Oil & Gas, Inc., Plaintiffs,

v.

James G. WATT, Secretary of the Interior, Robert F. Burford, Director, Bureau of Land Management, and Dallas L. Peck, Director, United States Geological Survey, Defendants.

Civ. A. No. 80–176.

United States District Court,
D. Delaware.

Sept. 13, 1982.

---

Charles F. Richards, Jr., Stephen E. Herrmann, Richards, Layton & Finger, Wilmington, Del., John P. Mathis, Marilyn Perry Jacobsen, Baker & Botts, Washington, D. C., Patrick F. Timmons, The Superior Oil Co., Houston, Tex., John M. Young, Donald C. Bishop, Pennzoil Oil & Gas, Inc., Houston, Tex., for plaintiffs.

Joseph J. Farnan, Jr., U. S. Atty., Peggy L. Ableman, Asst. U. S. Atty., Wilmington, Del., Sylvia Sepulveda-Hambor, U. S. Dept. of Justice, Washington, D. C., for defendants.

## OPINION

STAPLETON, District Judge:

The Outer Continental Shelf Leasing Act, 43 U.S.C. § 1331 *et seq.,* provides for the leasing of oil, gas and other offshore mineral resources in the Outer Continental Shelf. The Secretary of the Interior has responsibility for maintaining an oil and gas leasing program [1] and is authorized to grant leases to the "highest responsible qualified bidders." [2] The subject matter of this dispute is Outer Continental Shelf ("OSC") Sale No. 42, conducted on December 18, 1979 under the Secretary's leasing program.

The Secretary is directed to conduct its leasing activities in such a way as to "assure fair market value for the lands leased and the rights conveyed by the Federal Government." [3] In order to carry out this responsibility, the Secretary has developed three criteria or measures of value to aid in determining whether the high bid on a particular tract should be accepted. The first is the Mean of the Range of Values, or MROV. This is the United States Geological Survey's ("USGS") estimate of the resource value of the tract, determined before a sale and derived by use of a computer program which incorporates geologic, engineering and economic data about the tract, as well as data about the risks and uncertainties of development.

The second measure of value, also determined before a sale, is the Discounted MROV, or DMROV. This is the USGS's calculation of the value of a tract based on the assumption that the high bid is rejected and the tract is held for future sale. Thus, the DMROV is the future sale value discounted to its present value.

1. 43 U.S.C. § 1344.

2. 43 U.S.C. § 1337(a).

3. 43 U.S.C. § 1344(a)(4).

The third measure of value, calculated by the Bureau of Land Management ("BLM") after the sale, is the Average Evaluation of the Tract, or AEOT, which is the mechanism for considering the market's evaluation of the value of the tract. It is calculated by taking the average of the MROV plus the value of all bids actually received on the tract.

After each sale, the USGS provides its recommendations to the BLM as to the adequacy of the high bid for each tract.[4] USGS, which does not give any consideration to the AEOT, generally recommends that high bids equal to or above the MROV or DMROV be accepted, and that high bids below both the MROV and DMROV be rejected absent unusual circumstances such as the ongoing drainage of the resources of the tract. The BLM in turn provides its recommendations to the Secretary.[5] The BLM, also, generally recommends that high bids exceeding either the MROV or the DMROV be accepted. If a high bid is below both the MROV and the DMROV, as well as the AEOT, then the BLM generally recommends rejection. If, however, a bid falls below the MROV and the DMROV but equals or exceeds the AEOT, a so-called "problem bid," the BLM's recommendation depends upon a further consideration of the reliability of the AEOT as an indicator of the industry's consensus of the value of the tract. In order to make this determination, BLM considers several factors including the number of bids received on the tract and the percentage by which the high bid exceeds the AEOT.[6]

As part of the evaluation procedure, the Office of the Solicitor performs a consistency review of the BLM's recommendations. This review compares the BLM's recom-mendations with prior sale decisions in order to ensure that the Secretary's decisions are consistent with each other and with the Secretary's prior decisions.

On the basis of the evaluations and recommendations made in this evaluation procedure, the Secretary makes a final decision as to the adequacy of the high bids and as to the acceptance or rejection of such bids.

In OCS Sale No. 42, offshore oil and gas leases on 116 tracts of the North Atlantic OCS were offered for sale. On the tracts which received at least one bid, the average number of bids received was 2.6. Sixty-one tracts received high bids above the MROV or the DMROV. All of these bids were accepted. Nine tracts received high bids below the MROV, the DMROV and the AEOT. All nine were rejected. Three tracts received bids below both the MROV and the DMROV, but equal to or above the AEOT. The USGS recommended rejection of these three problem bids while the BLM recommended rejection of plaintiffs' bid on Tract 42–135, but acceptance of the bids on Tracts 42–58 and 42–118. The basis for the BLM's recommendation of rejection of the bid on Tract 42–135 was that because only two bids were received on the tract as compared with the sale average of 2.6, there was not sufficient competition to guarantee receipt of fair market value for the tract based on the AEOT. The BLM recommended acceptance of the bids on Tracts 41–58 and 42–118 because the number of bids received on each tract, 3 and 6 respectively, exceeded the 2.6 sale average.[7] On the basis of his concurrence with the BLM's recommendations, the Secretary rejected plaintiffs' bid and accepted the other two problem bids.[8]

4. Ad.Rec.Doc.No. 10.

5. Ad.Rec.Doc.Nos. 13, 14.

6. Other factors include (1) the percentages by which the high bid is below the MROV and DMROV, (2) the quality and reliability of the data available to USGS at the time the MROV and DMROV were calculated, (3) whether an anomalously low bid was received on the tract, (4) the type of tract, (5) the potential for drain-age of the tract's resources, and (6) any other information as to environmental or geological hazards obtained after the sale. Defendants' Opening Brief, 11; Affidavit of Thomas A. Readinger, ¶ 3.

7. Ad.Rec.Doc.No. 13.

8. Ad.Rec.Doc.No. 14.

This action challenges the Secretary's rejection of plaintiffs' bid. Plaintiffs have moved for summary judgment on the grounds that the decision to reject was arbitrary and capricious in violation of the Administrative Procedure Act ("APA").[9] The defendants also have moved for summary judgment on the grounds that the Secretary's decision to reject the bid was within his discretionary powers, was done after reasoned consideration of the bid pursuant to an established evaluation procedure, and was found to be consistent with prior rejection decisions.

■ The Secretary's decision to reject plaintiffs' bid is subject to judicial review under the APA. *Chevron Oil Co. v. Andrus,* 588 F.2d 1383, 1389–91 (5th Cir.), *cert. denied,* 444 U.S. 879, 100 S.Ct. 167, 62 L.Ed.2d 108 (1979). However, the scope of review under the arbitrary and capricious standard is a narrow one. If "the agency has a reasoned basis for its action," that action must be sustained. 588 F.2d at 1391.

Plaintiffs' challenge of the Secretary's decision as arbitrary and capricious is primarily based on their arguments that the AEOT criterion should have been, but was not, applied to their bid and that the decision treated similarly situated persons discriminatorily. They also argue that certain additional factors should have been taken into consideration in making the decision.

■ Plaintiffs' view that the AEOT criterion was not applied is based upon a persistent misconstruction of the Secretary's statements and the administrative record. The AEOT criterion is not a rigid rule, as plaintiffs seem to maintain, under which any bid which exceeds the AEOT is automatically accepted. Rather, the AEOT criterion is a flexible one. A problem bid is compared to the AEOT and even if it exceeds the AEOT, other factors may cause the Secretary to exercise his discretion against accepting the bid.[10] Plaintiffs contend, however, that the AEOT should have been applied to their bid as a pass-fail evaluation criterion. The substance of their argument is that the AEOT is a reliable indicator of the value of a tract regardless of the number of bids received on the tract. But, the AEOT is simply an estimate of value based on a sampling of the market place which includes the Department's own assessment of value (the MROV). In any data sampling, the more samples taken, the more reliable is a conclusion about that data. Thus, it is certainly rational to consider the number of bids when deciding about the reliability of the AEOT.[11] Further, there is nothing unreasonable about drawing the line of reliability at 3 bids and the Secretary has consistently rejected problem bids like plaintiffs' which only equal or marginally exceed the AEOT when the number of bids on the tract is less than three.[12] Line drawing of this sort is particularly suited for the administrative province and is within the discretion granted to the Secretary by statute.

■ Of the three problem bids in Sale No. 42, two were accepted, and one, plaintiffs' bid, was rejected. Plaintiffs maintain that this treatment was discriminatory because these two other bids were virtually identical to plaintiffs' bid in terms of their relationship to the Secretary's bid evaluation criteria. The data on these bids is as follows:[13]

---

9. 5 U.S.C. § 701 *et seq.*

10. Ad.Rec.Doc.No. 7.

11. In accord, *Kerr-McGee Corp. v. Watt,* 517 F.Supp. 1209 (D.D.C.1981). The fact that the MROV is a weight in the calculation of the AEOT does not alter this fact.

12. Ad.Rec.Doc.No. 12. The sole exception to this is where drainage of the resources of the tract is ongoing or impending. Ad.Rec.Doc.No. 12, Table I; Affidavit of Thomas A. Readinger, Defendants' Response Memorandum.

13. Ad.Rec.Doc.No. 9.

| TRACT | % MROV | % DMROV | % AEOT | # OF BIDS | ACC/ REJ |
|-------|--------|---------|--------|-----------|----------|
| 58 | 63 | 96 | 136 | 3 | Acc. |
| 118 | 56 | 95 | 147 | 6 | Acc. |
| 135 | 61 | 93 | 100 | 2 | Rej. |

Plaintiffs' view that the three bids are virtually identical is based on the fact that the percentages of the MROV and DMROV were approximately the same and all three bids equalled or exceeded the AEOT.

It is apparent from an examination of the data, however, that the plaintiffs' bid differed from the other two in that the number of bids on Tracts 58 and 118, 3 and 6 respectively, exceeded the 2.6 average while the number of bids on tract 135, 2, was less than 2.6. As was discussed above, it is not unreasonable to reject a problem bid where too few bids are received on that tract. Therefore, these bids were not similarly situated and the Secretary's treatment was not discriminatory. Further, as was also noted above, as part of his discretionary authority, the Secretary has consistently rejected problem bids where only two bids were received on the tract.

The other factors which plaintiffs suggest that the Secretary should have considered are the fact that this was a frontier area and that there was a great deal of controversy surrounding the sale because of environmental concerns. According to plaintiffs, because this was a frontier area, the Department's own estimate of value, the MROV, is less reliable, and, therefore, the AEOT deserves greater emphasis in the evaluation procedure. They say that this contention is supported by documentation issued since the sale in which the Department itself has recognized the reliability of the AEOT in frontier areas.

The fact that Sale No. 42 involved a frontier area was given consideration in the decision process. Probabilistic techniques are used in the computation of the MROV to account for uncertainties in resource volumes, recovery factors, and product prices.[14] In addition, the USGS gives the MROV a reliability rating based on the quantity and quality of the geological and geophysical data.[15] Plaintiffs can thus only argue that the Secretary gave insufficient weight to this concededly relevant factor. The relative weights to be given various relevant factors, however, is a matter for the discretion of the Secretary, not for this Court.[16]

Finally, while it is true that environmentalists filed litigation which resulted in delay of the sale on two occasions, I cannot say that the Secretary was arbitrary and capricious in failing to regard that opposition as having a material bearing on whether the plaintiffs' bid should be accepted.

The Secretary is charged by law with assuring that fair market value is received for lands leased and rights conveyed by the Federal government under the Outer Continental Shelf Leasing Act. At the time of OCS Sale No. 42, he had developed a procedure to be followed and standards to be applied in order to satisfy himself that the requisite assurance was present with respect to each proposed conveyance. That procedure and those standards were applied to Sale No. 42 and, in particular, to plaintiffs' bid. While plaintiffs accuse the Secretary of "splitting hairs," what he has necessarily done is to engage in line drawing. Since the statute vests the Secretary with discretion to draw lines and since he has done this on the basis of criteria ration-

14. Affidavit of Thomas A. Readinger, ¶ 5; Defendant's Opening Brief.

15. Ad.Rec.Doc.No. 7.

16. It is irrelevant that, since 1979, the Secretary has issued documents which may be read to suggest that greater weight would now be given to the frontier area characteristics of similar properties. At most, these documents tend to show that the Secretary might, at this point in time, weigh the factors differently.

ally related to his responsibility, his decision was not arbitrary and capricious. The Secretary's motion for summary judgment will be granted.